### M. F. DAVIS V. THE STATE.

#### No. 10399.   Delivered March 20, 1927.

##### 1.—Maintaining Building Where Intoxicating Liquor Is Kept—Indictment—Held Sufficient.

Where an indictment brought under Art. 688, P. C. 1925, avers that appellant did maintain a common nuisance, in this, to-wit: "that he did then and there unlawfully keep and maintain a building, where intoxicating liquors were kept, possessed and sold in violation of law," same was sufficient.

##### 2.—Same—Continued.

It was not necessary that the indictment should allege that the accused kept the intoxicating liquor in the building, nor that the accused himself sold said intoxicating liquor nor that accused "knowingly kept intoxicating liquor, for the purpose of sale." The word "knowingly" is not used in the statute under consideration (Art. 688). Distinguishing Morris v. State, 93 Tex. Crim. Rep. 99.

##### 3.—Same—Evidence—Held Sufficient.

Where, on a trial for maintaining a nuisance, brought under Art. 688, P. C. 1925, the evidence disclosed that the appellant was maintaining a building in which he sold jamaica ginger, commonly called "jake," as a "beverage," and mixed same with soda water, and saw purchasers drink it in his building, said evidence was sufficient.

##### 4.—Same—Continued.

Conceding that the jamaica ginger ("jake") kept in the building and sold by appellant, to have been manufactured in accordance with the formula furnished by the U. S. Pharmacopeia, or National Formulary, or the American Institute of Homeopathy, and that it was an alcoholic proprietary medicine which does not require the payment of the Federal tax as a beverage, still if same was kept and sold for beverage purposes, it would be in violation of law. See Luman v. State, 102 Tex. Crim. Rep. 355.

##### 5.—Same—Evidence—Properly Admitted.

Where, on cross-examination by appellant, a witness was asked some questions in regard to the label on a bottle of jake, there was no error, on re-direct examination, in permitting the state to go further into the matter, such re-direct examination being admissible under Art. 728, C. C. P. of 1925.

**6.—Same—Evidence—Of Writ of Injunction—Improperly Admitted.**

Where appellant was being tried for maintaining a building where intoxicating liquors were kept and sold, it was error to permit the state to prove by him, on his cross-examination, that a temporary writ of injunction, restraining him from maintaining such building for said purpose, had been served upon him. See Busby v. State, 51 Tex. Crim. Rep. 289; Dunagain v. State, 38 Tex. Crim. Rep. 614, and Allen v. State, 158 S. W. 508.

**7.—Same—Charge of Court—Knowledge of Accused—Should Have Been Given.**

Where the knowledge or lack of knowledge of the accused might become an issue in a case, where the articles kept and sold are of the character suggested in the present record, which raises this issue, it becomes a matter for the jury to determine, and should be submitted under proper instructions.

Appeal from the District Court of Smith County. Tried below before the Hon. J. R. Warren, Judge.

Appeal from a conviction for maintaining a building where intoxicating liquor was kept and sold, etc., penalty three years in the penitentiary.

The opinion states the case.

*Gentry & Gray* of Tyler, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Prosecution was under Art. 688, P. C. (1925) which declares any building where intoxicating liquor is kept, possessed, sold, etc., in violation of law, to be a common nuisance, and provides that whoever maintains such common nuisance shall be punished by confinement in the penitentiary not less than one nor more than five years. Conviction was had and punishment fixed at three years in the penitentiary.

Omitting formal parts, the third count of the indictment (which was the only one submitted) alleged that appellant did maintain a common nuisance, in this, to-wit: "that he did then and there unlawfully keep and maintain a building where intoxicating liquors were kept, possessed, and sold in violation of law." The averment follows the statute. Said count was attacked by motion to quash on the ground that it charged no offense because "(a) it was not alleged that accused kept the intoxicating liquor in the building, (b) it was not alleged that accused himself sold said intoxicating liquor, and (c) it failed to alleged that accused *'knowingly'* kept intoxicating liquor for the purpose of sale." It is believed the absence of none of the averments mentioned

affects the validity of the indictment. The offense denounced in Art. 688 (supra) is not the sale of liquor, nor the keeping of it for the purpose of sale, but maintaining a nuisance by keeping or maintaining a building in which intoxicating liquors are kept, possessed or sold in violation of law. For one to be guilty of the offense so denounced it is not thought to be requisite that accused himself sell or keep for sale the intoxicating liquor in the building, hence no necessity for so averring; it therefore follows that it would likewise be unnecessary to allege that accused *"knowingly"* kept the liquor for the purpose of sale. Neither would it be required to allege that accused "knowingly" kept or maintained the building, etc. The word "knowingly" is not used in the statute under consideration (Art. 688). It is used in Art. 687, in defining a kindred offense and by reason of its use there this court held in Morris v. State, 93 Tex. Crim. Rep. 99, 245 S. W. 915, that its omission by the pleader in attempting to charge an offense under said Art. 687 would be fatal to the validity of the indictment.

Appellant urges as error the refusal of the court to instruct a verdict of acquittal. The request was based upon the proof showing that the articles kept in said building and sold therefrom were jamaica ginger (commonly known as "jake") and pear extract. The evidence further shows that these articles were not taxable as beverages under the Federal law, and it is therefore contended that they could not be classed as intoxicating liquors. Little is said in the record about the "pear extract;" most of the evidence deals with the jamaica ginger. It was shown to contain from 92 to 93 per cent alcohol; that it was sometimes prescribed by physicians as a medicine, and that when used as a medicine the ordinary dose was from eight to forty drops, and that when taken in such quantities it was not intoxicating.

Article 666, P. C., denounces the unlawful handling of "spirituous, vinous, or malt liquors or medicated bitters capable of producing intoxication, *or any other intoxicant whatever."* Art. 667, P. C., condemns the handling of "spirituous, vinous, or malt liquors or medicated bitters, *or any potable liquor, mixture or preparation containing in excess of one per cent of alcohol by volume."* Art. 672 reads as follows:

"The words 'intoxicating liquors,' or 'liquors' hereafter used in this chapter shall be held to include and comprehend all liquors referred to in the first and second articles of this chapter (which are Arts. 666 and 667) and the said liquors prohibited by

said articles will hereafter be referred to herein for convenience as 'intoxicating liquors'."

Article 673 reads as follows:

"The various liquors described in the first two articles of this chapter shall be construed to include all distilled, malt, spirituous, vinous, fermented or alcoholic liquors and all alcoholic liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called, which require a Federal tax as a beverage, or which contain more alcohol than is necessary to extract the medicinal properties of the drug contained in such preparation and to hold the medicinal agents in solution and preserve the same."

It is appellant's contention that jamaica ginger ("jake") is recognized as a medicine under our law and because no Federal tax is demanded on it as a beverage that therefore it cannot form the basis of a prosecution for maintaining a nuisance against one who keeps a building in which such article is kept for sale. We quote that part of Art. 674, P. C., a construction of which is called for in determining the question now under consideration:

"Nothing in this chapter shall * * * prevent the manufacture, transportation, sale and keeping and storing for sale any medicinal preparations manufactured in accordance with formulas prescribed by the United States Pharmacopeia or National Formulary or American Institute of Homeopathy, or of alcoholic, patent or proprietary medicines which do not require the payment of the Federal tax as a beverage and which contains no more alcohol than is necessary to extract the medicinal properties of the drug contained in such preparation, and to hold the medicinal agents in solution, and to preserve the same *and which are manufactured and sold for legitimate and lawful purposes and not as beverages.*"

It appears to be appellant's contention that under the articles of the statute quoted the sale of jamaica ginger ("jake") would not be in violation of the law, although sold as a beverage because no Federal tax was collectable upon it as such. Conceding that the articles kept in the building and sold by appellant to have been manufactured in accordance with the formula furnished by the United States Pharmacopeia or National Formulary or the American Institute of Homeopathy, or that they were alcoholic proprietary medicines which do not require the payment of the Federal tax as a beverage, still in determining whether they were "kept, possessed or sold" *in violation of law* must be controlled by the underscored lines from the last quoted statute.

The application of this statute must, of course, turn upon the evidence. If appellant kept or sold the jamaica ginger for legitimate and lawful use as a medicine he violated no law. (Luman v. State, 102 Tex. Crim. Rep. 355, 277 S. W. 1071.) If the building was maintained by appellant in which such article or articles were kept or sold for such legitimate purpose no basis would exist for declaring such maintenance of the building to be a common nuisance under Art. 688. On the contrary, if the evidence shows that appellant was selling from such building the jamaica ginger as a "beverage," and that when so used it was an intoxicating liquor, he ceases to be protected by the provisions of Art. 674. The evidence shows that appellant was selling it as a beverage; that often he would mix it with soda water which he provided and also the glass in which it was mixed, and would see the purchaser drink it, and sometimes would "split" the bottle, that is, he would drink half and the purchaser half, in which event he would only collect forty cents from the purchaser, whereas the price for a whole bottle was seventy-five cents. As so mixed by appellant the jamaica ginger became a "potable," that is, drinkable liquor, and was so sold by appellant and used by the purchaser in his presence. Being sold as a "beverage" and as such being intoxicating it became an "intoxicating liquor" under the provisions of Arts. 666, 667, 672 and 673, P. C. There is no merit in the suggestion that the language of Art. 674, P. C., "which are manufactured and sold for legitimate and lawful purposes" should be construed to have reference only to the purpose which the *manufacturer* had in making and selling the articles named in such statute. The manufacturer might make and sell the articles and preparations with no other than the legitimate and lawful purpose that they be used as medicine, yet if the retailer perverted such purpose and sold them as beverages which are intoxicating, he would thereby place himself without the pale of the law.

Appellant complains of an incident which occurred while the witness Hensley was being examined where the trial judge propounded two or three questions to the witness. It is not thought such harmful effects could have resulted to appellant from this incident as would demand a reversal. The matter is not likely to occur on another trial and the necessity does not arise to discuss it at length as the judgment must be reversed upon another ground.

While the witness Hamon was being cross-examined by counsel for appellant he was handed a bottle of "jake," and after stating it looked like the kind he had bought at appellant's place

of business was asked if it did not say on the bottle that a dose was fifteen drops; witness replied that it did so state, and was then asked if he knew what the lettering "U. S. P." on the bottle stood for, and replied that he did not. Upon re-direct examination counsel for the state asked him if he knew what per cent of alcohol "jake" contained to which he replied he thought it was about 90 or 92 per cent. Witness was then handed the same bottle he had examined at the instance of appellant's counsel and stated that the bottle said it contained 93 per cent alcohol. This was objected to by appellant upon various grounds, the gist of such objection being that it was hearsay. Counsel for appellant having first gone into the question of the statements contained on the label of the bottle that part developed by the state upon re-direct examination would seem to be admissible under Art. 728, C. C. P., which provides that when a part of a writing is given in evidence by one party the whole on the same subject may be inquired into by the other. We are at a loss to attribute any harmful effect to the statement from the witness that the label showed that "jake" contained 93 per cent alcohol. The uncontroverted evidence in the case shows this and was so testified by appellant himself, who stated that some "jake" contained 93 and some 92 per cent.

Bill of exception No. 7 certifies that the evidence for the state had shown that appellant was the owner and keeper of a certain house wherein he sold what is known as Watkins Remedies and non-alcoholic near-beer, jamaica ginger and also pear extract, the proof also having shown that jamaica ginger contained 93 per cent of alcohol and the pear extract about 50 per cent of alcohol; that appellant bought all three of these articles in the open market and sold them openly at his place of business; that a number of witnesses had testified that neither the jamaica ginger nor pear extract when drunk in practical quantities would produce intoxication, that jamaica ginger was prescribed and sold in drug stores as a medicine; that appellant claimed as a defense that he had a right to sell both jamaica ginger and pear extract without violating the law or maintaining a nuisance in any sense of the word; that he did not know it was unlawful to sell jamaica ginger nor that the same was intoxicating; that after he had so testified the District Attorney, over objection, asked him if a writ of injunction had not been served upon him forbidding him to sell the things he claimed he had a right to sell, and that the District Attorney, with certain papers in his hand, asked if he had not been served with a copy of them, the same being a temporary writ of injunction; that appellant

answered that he had been served with some kind of papers, the exact nature of which he did not know, but no action had been taken on the same, whereupon the District Attorney offered in evidence and read to the jury the following portions of the injunction writ:

"* * * Therefore, you are commanded to refrain from using said premises as a nuisance and refrain from selling, keeping, possessing, manufacturing intoxicating liquors in said place as above directed, until the further order of said court, to be holden within and for the County of Smith, at the courthouse in the city of Tyler, on the 14th day of November, 1925. * * *."

Objection was urged to this testimony for several reasons, among others being that the writ of injunction had never been perpetuated, that no final judgment was entered on it, that the matter was not connected in any way with the matter on trial, and that its reception in evidence could only serve to prejudice the jury against appellant and his defense, and cause the jury to believe that appellant had been prosecuted for the same offense before the present trial. In permitting inquiry with reference to the injunction proceeding and the admission in evidence of that part of the writ above set out the learned trial judge fell into error. It is not necessary to discuss the matter at length. The cases of Busby v. State (opinion on rehearing), 51 Tex. Crim. Rep. 289, 103 S. W. 638; Dunagain v. State, 35 Tex. Crim. Rep. 614, 44 S. W. 148, and Allen v. State, 158 S. W. 508, seem decisive in sustaining appellant's contention against the receipt of such testimony. Other authorities will be found collated in the Busby case (supra). From these authorities it appears extremely doubtful if the testimony would have been admissible had a final judgment perpetuating the injunction been entered. The record before us shows that only a temporary injunction had been issued, whether upon a hearing after notice or upon the state's ex parte petition does not appear. In either case the order only reflects the opinion of the judge as shown by the portion introduced before the jury. It was improperly admitted and we cannot do otherwise than hold it to have been harmful. The penalty assessed was three years' confinement in the penitentiary. The effect of the testimony improperly admitted was bound to have impressed the jury with the idea that appellant had already been adjudged guilty by the court issuing the injunction, and that notwithstanding such restraining order appellant had persistently continued to violate the law. The evidence may have been such as would have authorized the jury to fix the punishment at two years

more than the minimum, independent of the evidence improperly admitted, but there can be no room for argument that the evidence which should have been excluded was cogently calculated to bring about that very verdict.

We have examined the court's charge in the light of the objections urged. In our opinion the criticisms are not justified.

Appellant requested a special charge upon his lack of knowledge as to the intoxicating character of the articles kept for sale in the building claimed to be a nuisance. Without discussing the particular charge requested, we suggest that accused's knowledge or lack of knowledge might become an issue in a case where the articles kept and sold are of the character suggested in the present record. Where the issue is raised, even though it be with little cogency, it becomes a matter for the jury to determine and should be submitted under proper instructions.

For the error discussed the judgment must be reversed and the cause remanded.                    *Reversed and remanded.*