## DODD et ux. v. STATE.

### No. 13705.

### Court of Civil Appeals of Texas. Dallas.

### March 8, 1946.

### Rehearing Denied April 5, 1946.

J. S. Simkins and Norris W. Lovett, both of Corsicana, for appellants.

Grover Sellers, Atty. Gen., and Bob Lattimore and George W. Barcus, Asst. Attys. Gen., for appellee.

BOND, Chief Justice.

This is an appeal from a judgment of the District Court of Henderson County, Texas, rendered December 3, 1945, by default, permanently and perpetually enjoining W. B. Bond, Melvin T. Dodd, Mary Dodd, Lola B. Womack and Bernice Holcomb, and each of them, their agents, servants and employes, from selling, possessing for the purpose of sale, or transporting, in violation of law, any alcoholic beverages in Henderson County, particularly on, at, or upon the place and premises specifically described and known as "Tavernale Night Club," and from operating and maintaining said place and premises as a "common nuisance", as defined in the Texas Liquor Control Act, Art. 666—29, Vernon's Ann. Penal Code; and adjudging said place a common nuisance, ordering it closed and padlocked for a period of one year from the date of said judgment, or until such time as the owner, lessee, tenant or occupant thereof shall give bond in the penal sum to be determined by the court, not less than $1,000, payable and conditioned as required by the Act.

The evidence on which the judgment was based is to the effect that the sale, transportation and possession of intoxicating beverages for the purpose of sale are pro-

hibited in Henderson County; that Melvin T. Dodd and Mary Dodd are the owners of the land and premises known as "Tavernale Night Club" located five or six miles out of the City of Athens, on the Corsicana Highway, in Henderson County; that W. B. Bond, lessee or tenant of Dodd, had the management and control of the building and premises, and therein conducted a cold-drink, dine-and-dance hall; and had as his employes Lola B. Womack and Bernice Holcomb, who aided in conducting the business. That immediately prior to the institution of the suit, a Mr. Allen, inspector for the State Liquor Control Board, purchased at the night club a pint of whiskey from Bond, paying him $5 therefor; later purchased two bottles of beer from Bernice Holcomb, paying her $1 per bottle; and again on the same day purchased two pints of whiskey from her, and then another pint of whiskey; that during the same time he purchased from Lola B. Womack another bottle of beer. Mr. Allen further testified that the night club was equipped with a bar or service counter where beer and whiskey were sold, and over which the sales to him were consummated by Bond, Holcomb and Womack.

Mr. Talley, another inspector for the Liquor Control Board, testified to buying whiskey and beer over the bar or counter at the night club from Bond, Holcomb and Womack; that the sales were made by and in the presence of all three of the defendants.

Mr. Poplin, District Supervisor for the Liquor Board, testified that a short time before the suit was filed, he and two inspectors, J. R. Douglas and R. T. Bailey, searched the Tavernale Night Club and found "22 pints of whiskey (about 10 one-fifths), 5 or 6 cases of beer, 4 bottles of beer in the ice box cold, there was about 80 bottles of beer that wasn't on ice, that wasn't cold;" that they arrested Bond, took him to court where he pleaded guilty and was fined $100 and costs for the possession of intoxicating beverages for sale. Mr. Poplin also testified that he made a further raid on, and search of the night club, and "got fifths of whiskey, 12 pints of whiskey in a trap up there, and about 2 cases of beer out of the ice box, got 3 cases of beer out of Melvin Dodd's car, that was parked up to the west side door of the premises;" that Bond was again arrested for unlawful possession of liquor, plead guilty and paid a fine. That on each occasion of his visits, searching the club, Melvin Dodd was there;

and that on the night they got the beer out of his car, "I just saw him that night, he got out of his car and 'took out' from the place and we couldn't get hold of him." Mr. Poplin further testified that "The first time I went there the customers were being served beer, the last time there was over 100 people in the place. I took the names of 57 people, customers that were there, being served, dancing. I didn't take the names of the ladies, they all had women with them, more or less 100 customers."

Mr. H. B. Groves, another inspector for the Liquor Board, testified that he knew Melvin Dodd, had a conversation with him about "the kind of business that was being conducted there"—Tavernale Night Club; that he said he didn't have anything to do with it other than owner of the property; that Mr. Bond was manager, and, after telling him about the handling of whiskey and beer in there, he said that he knew it, but had no interest in it; it was none of his business. Mr. Groves further testified that he was present and assisted the sheriff, Jess Sweeten, Mr. Carter and Mr. Poplin, in making search of the night club, and while standing outside watching, "a Cadillac convertible drove up by the side door, about 20 feet from the side door, and Mr. Dodd got out from this Cadillac. I recognized him, and Mr. Carter also recognized him * * * We let Dodd get out of the car and walk to the front of the building; he looked in and went on to the side of the building, and turned back and went and looked at the front of the building and looked at us, Mr. Carter and myself, and turned and went back through the cars. He was going towards the highway the last time I saw him * * * I happened to glance in the car, saw the keys were in it, and looked in the back of the car and there was 4 cases of beer", which were confiscated. Mr. Groves further testified that at the time of the raid "there was a large number of people there, men and women. I would say there was anywhere from 40 to 50 cars parked around the building, and people came there and tried to get in and several of them made the remark: "There is no chance to get any whiskey here tonight; they got a raid on." Further testifying, Mr. Groves said that subsequent to the above raid, another raid was made on the night club on November 17, after this suit was filed, and a Mr. H. B. Orand was in charge; that Mr. Orand was arrested; also Mr. Dodd, for unlawful possession of liquor.

On December 17, 1945, more than 10 days after the rendition of the judgment, the defendants (appellants) Melvin T. Dodd and Mary Dodd, for themselves alone, filed a bill, or motion, seeking to vacate and set aside the judgment as to them personally, and to open and unpadlock the building, "Tavernale Night Club," alleging that they were the owners of the building, that W. B. Bond had been the lessee, subsequently, pendente lite, H. B. Orand was the lessee and had full control, management and occupancy of the premises at the time of the rendition of the judgment. The grounds for defense, as stated in the motion, are that neither of the defendants, Melvin Dodd or Mary Dodd, were guilty of any of the unlawful offenses charged in plaintiff's petition, and that they had no knowledge of the existence of the nuisance created by the unlawful acts of the other defendants, Bond, Womack and Holcomb, resulting in the closing and padlocking of the building.

It will be observed that there is no allegation in appellants' motion decrying the judgment against Bond, Womack and Holcomb, or against the existence of the nuisance resulting from their unlawful acts; and those defendants are not here complaining of the judgment, and certainly Orand, the present lessee of the building, not being a party to the action, although bound by the judgment, has not sought to open the night club. Appellants' sole complaint is that the judgment restrains them personally from violating the Liquor Control Act in Henderson County (a dry county); and in closing and padlocking the building.

On hearing of the motion, the trial court (having judicial knowledge of the evidence supporting the judgment as well as the evidence supporting the motion) overruled the motion, to which action the said defendants excepted, gave notice of appeal, and forthwith filed cost bond for appeal. Thereafter, appellants presented to the trial court an appeal-pending bond to supersede the judgment as to them personally and the closing and padlocking of the building.

Appellants here present point of error to the action of the trial court in refusing to grant their motion to vacate and set aside the default judgment, on the ground "that their failure to appear at a hearing of said cause on December 3, 1945, was due entirely to the sickness of their counsel, W. D. Justice, and that they were fully prepared to offer a meritorious defense to the suit instituted by appellee." It will be seen that the point raised is exceedingly general, requiring this court to search the record for error of the trial court in overruling their motion; however, we have done so, and find that neither the motion nor the evidence discloses from whom, other than themselves, they might obtain proof of innocence of any of the offending parties, or who would deny the unlawful acts which resulted in the closing and padlocking of the building.

The record shows that the suit was instituted on November 9, 1945, citation duly issued and served on defendants W. B. Bond, Melvin T. Dodd, Mary Dodd, Lola B. Womack and Bernice Holcomb, on November 10, 1945, and the cause set for trial on December 3, 1945; that neither of the defendants made answer, and none, except Melvin T. Dodd, made personal appearance in court on the day of trial. On insistence by the State, the trial court heard evidence which revealed open, flagrant, and continuous violations of the Liquor Control Act in Henderson County (a dry county), of Texas, by all of the defendants, other than Mary Dodd, the owner of the property; also disclosed that the condemned place was a notorious rendezvous for violators of the liquor law; that intoxicating liquors were sold over the bar or counter, and possessed for sale in and about the night club in large quantities, and that the place, regardless of who was responsible for it, was a noxious common nuisance. The record further discloses that the defendant Melvin T. Dodd was in court when the case was on trial and, well knowing that the Honorable W. D. Justice was not present, not then representing him, and, in fact, was a sick man unable to be present, made no motion or request to the court, or the State's attorneys, for agreement to continue or postpone the trial. After judgment, Mr. Dodd began negotiations with other attorneys, employing them, and had many conferences with his attorneys with reference to the judgment and his defense; and not until December 17, 1945, after the ten days had elapsed for filing motion for new trial (Rule 330, Texas R.C.P.), and until after the trial court had entered a further order directing the sheriff of Henderson County to carry the judgment into effect, and the sheriff had closed and padlocked the Tavernale Night Club, did Melvin T. Dodd and Mary Dodd con-

cern themselves to file their motion to set aside and vacate the judgment. To preclude the granting of relief, the complainants were required to act promptly, completely, practically and efficiently, and present sufficient and convincing proof that they had been compelled to suffer the judgment by circumstances beyond their control. Relief will be denied, where it appears that they failed to avail themselves of means to arrest the judgment, or to vacate it.

On the hearing of the motion, Mr. Justice testified: "Now this injunction suit, I was not employed in that suit. The question of my being employed was discussed quite a lot. I was sick during November and December most of the time and my memory don't always serve me just right, but on Saturday before the case was coming up on Monday, at that time I refused employment in it, well, I'll tell you what I said, I didn't refuse employment, I told him that I couldn't accept employment on account of my physical condition. I didn't feel like I was strong enough to take the case. At that time we discussed the matter, I imagine something over an hour. I looked up law questions as to the matter of bond, and we discussed it quite at length. I remember this question come up * * * I hold him that 'I understood you had other lawyers at Dallas employed to represent you, and for that reason I haven't given your case any thought.' I was glad he had somebody else because I couldn't try it no way, and it was a relief for them to take the case, because of the fact I had always represented him. I don't think we settled the question whether I would or wouldn't. I told him it would be better for him to see me the next day. On Monday morning I was sick again, and it was some weeks after that before I was able to try a case. That's about what I know about it." On cross-examination Mr. Justice was asked, and responded thereto:

"Q. You told him (Melvin Dodd) to be there, that this case was set that morning? A. I think that's right.

"Q. Now you led him to believe you represented him? A. I don't know whether I did or not, after my telling him what I did.

"Q. Wouldn't that be the effect of it? A. Just to be frank about it, since you press the question, I don't think so.

"Q. Why didn't you give him his citation back and tell him you didn't want to represent him? A. I told him when he first came there that I was a sick man and didn't want to represent him."

Evidently Mr. Justice did not represent Dodd or cause Dodd to believe that he would do so.

Thus it will be seen that appellants offered no excuse for their failure to make appearance in court in obedience to the citations served upon them, or any excuse for their failure to file motion to vacate, or set aside, the judgment before execution thereon was issued and the building closed and padlocked. The only defense offered by Melvin T. Dodd was that he and his wife, Mary Dodd, were innocent of any violation of the law, that they had no knowledge of the unlawful acts of the other defendants, or of the existence of the nuisance closing and padlocking the building, and that they depended upon their attorneys to look after their interests. It seems that the closing and locking of the building is the troublesome element in this appeal.

Art. 666—29, Vernon's Ann.P.C., under which this suit was instituted, provides that the proceedings are in rem against the building closed and padlocked for unlawful acts of owners, lessees, tenants, occupants or patrons, as to create a nuisance. If, in fact, Dodd and wife were innocent of all violation of the law, and had no knowledge of the acts of their codefendants causing their property to be condemned as a nuisance, they cannot complain of the closing and padlocking of the building for unlawful acts of others. The judgment, as to their tenants, agents, and employes, and the closing and padlocking of the building, is final; the decree declaring the building a nuisance is also final. Innocence of the owner, or his lack of knowledge of acts creating the nuisance, are not controlling elements in the closing and padlocking of the building.

In the case of Moore v. State, 107 Tex. 490, 181 S.W. 438, it is held that the owner of a house condemned as being used for unlawful purposes may be enjoined from maintaining a public nuisance, although he had no knowledge of the illegal use to which his premises were being devoted. Liability is predicated on the wrongful act of creating or continuing the nuisance, rather than on the ownership or occupancy of the premises. See also Davis v. State, 106 Tex.Cr.R. 425, 292 S.W. 1109; Morris v. State, 93 Tex.Cr.R. 99, 245 S.W. 915.

Under all the facts and circumstances in this case, we think the court did not err in overruling appellants' motion to set aside and vacate the judgment.

Subsequent to the perfection of this appeal, the trial judge having refused to approve the appeal-pending bond, appellants made application to this court for writ of mandamus to compel the Honorable V. M. Johnston, District Judge, to perform that ministerial act as provided in the Liquor Control statute, attaching thereto the bond. This court, opinion not published, concluded that the bond presented should have been approved by the trial judge; but, for comity between this court and courts generally, and because of an agreement entered into by the parties for early submission of the cause on its merits, we declined to order the writ of mandamus issued. In disposing of this appeal, we conclude that the question of issuing the writ has been finally determined, hence appellants' motion urged to have the writ now issued is denied.

The judgment of the court below is affirmed.

YOUNG, Justice.

The testimony of Mr. Will Justice well supports the trial court's implied finding that appellants failed to exercise due diligence in the matter of appearance and contest of cause. On this ground I concur in the judgment of affirmance.