Owen W. SHERRILL, Appellant,

v.

Henry PHILLIPS, Appellee.

No. 11422.

Court of Civil Appeals of Texas.

Austin.

July 20, 1966.

Rehearing Denied Aug. 24, 1966.

McClain & Stump, W. K. McClain, Georgetown, for appellant.

E. M. Grimes, Taylor, for appellee.

HUGHES, Justice.

This suit is by Henry Phillips, appellee, against Owen W. Sherrill, appellant, to recover on a broker's contract relating to the sale of certain realty in the State of Arkansas.

Trial was to a jury on whose verdict judgment was rendered against appellant for the sum of $9,687.30.

Owen W. Sherrill and Grace White Hetrick, have been licensed real estate brokers and Henry Phillips has been a licensed real estate salesman, under Mrs. Hetrick, in Texas during all the times relevant to this suit. Mr. Sherrill, during such time, was also a licensed real estate broker in Arkansas. Neither appellee nor Mrs. Hetrick were licensed realtors in Arkansas.

Any interest which Grace White Hetrick may have in this suit has been assigned to appellee.

In October 1959 appellee received a letter from H. L. Arrington, Vice President and General Manager of Elk Roofing Manufacturing Company, Inc. of Stephens, Arkansas, in which was stated: "Should our factory be sold for the $2,000,000.00 as discussed, you will receive 1% of that sales price."

Within a few days following receipt of this letter, Mr. and Mrs. Hetrick and appellee called upon Mr. Sherrill and a written contract was then executed by the parties hereto and by Mrs. Hetrick on behalf of her realty company. We copy portions of this contract, Mr. Sherrill being designated, "First Party" and the others "Second Parties:"

"WHEREAS, Second Parties Have as a client a certain business man of San Antonio, Bexar County, Texas, who desires to purchase for himself or for businesses in which he has an interest a certain manufacturing concern located in the State of Arkansas engaged in the manu-

facturing of certain building materials; and

WHEREAS, Second Parties desire the assistance of First Party in the negotiation and completion of the aforementioned transaction and First Party is willing and able to render such assistance;

NOW, THEREFORE, in consideration of the mutual promises of the parties hereto it is agreed by and among them that First Party shall aid and assist in the negotiation and completion of the above designated transaction (it being contemplated that the names of the prospective seller and purchaser will be disclosed to First Party upon the execution of this agreement) to the best of his ability and that any and all commissions and compensation paid to the parties hereto arising out of and in connection with such transaction shall be divided as follows: Forty five per cent (45%) of the gross commissions or compensation shall be paid to First Party and fifty five per cent (55%) of the gross commissions or compensation shall be paid to Second Parties, * * *."

Following execution of this contract, Second Parties revealed to First Party the name of the business to be sold, Elk, and the name of the prospective buyer, Morris D. Jaffe, as previously they had agreed to do. Sale to Jaffe was never consummated.

Appellee pleaded and the jury found that on or about April 6, 1960, the parties and Mrs. Hetrick made an oral agreement in substance as follows: (1) that appellant and his associates would seek a purchaser for the Elk Company, other than Jaffe (2) appellee and his associates agreed that they would not attempt to sell Elk to anyone other than Jaffe, except through appellant, and that the sale to anyone other than Jaffe would be considered a sale to a customer of appellant, and on any sale, except to Jaffe, the commission earned would be divided two thirds to appellant and one third to appellee and associates (3) that the Jaffe contract was to remain in effect in the event of a sale to him.

After the making of this agreement no attempt was made by appellee and his associates to sell Elk to anyone other than Jaffe.

On April 7, 1960, appellant wrote appellee as follows:

"GEORGETOWN, TEXAS
April 7, 1960

Mr. Henry Philips
2811 Salado
Austin, Texas

Re: Elk Mfg. Co., Stephens, Ark.

Dear Henry:

Confirming our telephone conversation of last evening—where in you have been the Finder and furnished the above company with request—we work towards a sale. This advises you, in the event I am successful in perfecting a sale and collecting a commission there for, in event I sell above to a customer of mine, I agree to pay you one-third of my fee.

However, in event of a sale to Joffe of San Antonio we have other prior agreement not effecting the above.

Yours very truly

/s/ Owen W. Sherrill"

The Elk property was sold in 1960 for $1,500,000.00, the jury finding that it was sold to one of appellant's customers. This finding was based, in part, upon the testimony of the President of Elk that Mr. Sherrill came to see him in 1960, one year after appellee came to see him regarding the sale of Elk, about selling Elk and the sale originated with him, and that he, Mr. Sherrill "was the man that negotiated the sale with me."

Between August 4, 1960, and January 2, 1962, appellant received $22,500.00 in commissions as a result of the sale of Elk.

On August 8, 1960, appellant wrote to appellee as follows:

"GEORGETOWN, TEXAS
April 8, 1960

Mr. Henry Philips
2811 Salado Street
Austin, Texas

Dear Henry:

I hold for you a finder's fee of $2500.00 for your immediate letter of acceptance and signed approval.

Please return copy signed and check will be mailed to you at once.

Understand the seller paid *no* brokerage. Nathan did his best with the buyer and I sincerely hope you are appreciative. I am sorry Henry you never could get San Antonio man into action.

Best wishes.

Sincerely,
/s/ Owen
/t/ Owen W. S*j*errill

I will accept $2500.00 finder's fee and will thank you to send check at once.

_____
/t/ Henry Philips

This is my instructions from Nathan for your immediate acceptance or retu*nr* his check at once.

/t/ Owen

OWS:JW
cc: Nathan Witkind"

This offer was refused by appellee and this suit followed.

Appellants' first point is that the agreement between him and appellee and associates is not supported by a consideration.

We quote from appellant's brief excerpts to show the basis for this contention and his concept of the question presented:

"Phillips was under a general duty to the public not to sell property in Arkansas, and so his promise not to do so cannot serve as consideration under the rules of the Restatement of Contracts. * * Phillips did not have any enforceable rights against Elk for the reason that he, Phillips, the salesman and Hetrick, the broker, did not have a license to sell real estate in Arkansas. * * * It is true that a promise to forbear can be sufficient consideration to support a return promise, but it must be a promise to for-

bear doing something that Phillips has a legal right to do. A promise to forbear something that Phillips or Hetrick had no legal right to do is not valuable consideration. It is admitted by appellee that he did not have a license to sell real estate in Arkansas and that Grace White Hetrick, the broker and assignor of Phillips had no such license in Arkansas. Any attempt upon the part of Phillips or Hetrick to sell the land in Arkansas would be subject to fines and imprisonment in the State of Arkansas, and any contract for a commission on the sale of Arkansas property would have been unenforceable against the Seller Elk Roofing Manufacturing Company. Thus we have a case based upon an oral contract, the sole consideration for which is the promise of the appellee Phillips not to attempt to sell real estate located in Arkansas. The appellee Phillips refrained from doing something which he had no right to do in any event. Can this be consideration for a return promise?

A search of the authorities reveals that the uniform rule is that a promise to forbear doing something that the party has no right to do is not sufficient consideration to support a return promise. * * In our case Phillips had no right to sell Arkansas property, and he knew this at all times material to this case. Therefore, Phillips was promising not to do something that he knew he had no right to do. * * * It may be argued by appellee that even though Phillips did not have an Arkansas license, he might have nonetheless attempted to sell the property. As a matter of the law of consideration, the court should not consider what he might have done improperly; in order to constitute a valuable consideration for a return promise, the forbearance must be of a right which the plaintiff legally had."

Many of the statutes of Arkansas are cited to the effect that it would be unlawful for anyone to engage in the business of selling real estate in Arkansas without obtaining a license in accordance with its laws.

We are in complete disagreement with appellant in his view of the applicable law.

The contract between the parties was made in Texas, in accordance with the laws of Texas, it was performable in Texas, and was a valid contract, enforceable in the Courts of this State.

It was not contemplated by the parties to the contract that appellee and his associates were to do anything in the State of Arkansas. In fact, they agreed not to do anything to effect a sale of this property on their own to anyone anywhere, except to Jaffe who lived in Texas.

Even though the agreement be construed as binding appellee and associates not to try to sell this property in Arkansas and to such extent the contract be held nudum pactum because they were then prohibited by law from attempting to sell it in Arkansas, their agreement not to attempt to sell the property elsewhere in their own right [1] and where not prohibited by law would constitute a valid and valuable consideration supporting the contract.

There is no law of which we are aware to the effect that a real estate broker in Texas cannot act as broker in Texas in selling or offering for sale to a Texan property located in Arkansas. The restraint not to offer this property for sale in Texas was, in our opinion, a legal detriment to appellee and a sufficient consideration to support the promise of appellant to divide his commission with appellee and associates.

We cite in support of the above conclusions the following authorities: Warren v. White, 143 Tex. 407, 185 S.W.2d 718, Grace v. Orkin Exterminating Company, 255 S.W. 2d 279, Tex.Civ.App., writ ref., n. r. e., Richland Development Company, Inc. v.

1. By the phrase "in their own right" is meant the right of appellee to sell Elk under the original listing from Elk's Vice President unrestricted by the contract between the parties (including Mrs. Hetrick) to this suit.

Staples, 295 F.2d 122 (5th Circuit) and 12 Am.Jur.2d, Brokers, Sec. 37, p. 799.

In Richland the suit was by a real estate agent against two Alabama corporations for the recovery of a commission agreed to in a valid Missouri brokerage contract covering the sale of land in Alabama, the agent although licensed in Missouri was not licensed in Alabama, and the Court affirmed judgment for the agent for his commission, even though the agent performed some acts in Alabama in furtherance of the sale.

There is no contention here that the contract in suit is invalid under the laws of Texas or that appellee and associates performed any act under it in the State of Arkansas.

We overrule appellant's first point.

■ Appellant's second point is that the court erred in admitting evidence of four sales made by him which were in no way connected with this controversy. This evidence is in the form of a reprint from the Williamson County Sun of July 13, 1959, the objectionable portion of which we quote:

"From his early days as a Realtor, Mr. Sherrill has promoted the idea of Realtor cooperation, and he is quick to give credit to the cooperation of other Realtors for much of his success. The 22 story Shell Building in Houston for 4½ million dollars, the five block Federal Center in Fort Worth for 5½ million (these two in cooperation with Sherrill's New York Realtor-attorney associate, Nathan Witkind), a $350,000 Texas loan to a bank's client in another state, and the 2½ million dollar Hilton Inn above are recent examples of Sherrill's cooperative transactions, all crossing state lines, and with similar deals in negotiations."

Regarding this clipping, Mrs. Hetrick and appellee gave similar testimony. Appellee testified:

"Q Mr. Phillips, I present to you Plaintiff's Exhibit No. 7.

Q Have you ever seen this instrument before?

A I have.

Q What does it purport to be, Mr. Phillips?

A A reprint from the Williamson County Sun, Georgetown, Texas, July 13, 1959.

Q Where did you first see this instrument, Mr. Phillips?

A Mr. Owen Sherrill gave it to me in his home.

Q Did he discuss any men that are mentioned in this instrument to you at that time?

A He mentioned one Nathan Witkind in New York, an associate of his, who worked with him in putting over those million-dollar deals that's shown in that article.

Q State what was done by you, if anything, regarding whether or not you read this instrument before you contracted with Mr., before or at the time you contracted with Mr. Sherrill.

A The article and publication was given to me by Mr. Sherrill to prove his ability to merchandise the project I brought to him, namely the Elk Roofing Manufacturing Company in Stephens, Arkansas."

Appellant's objections to this evidence, brought forward, are that it was irrelevant and inflammatory.

It is our opinion that appellant adopted this article as his own under the circumstances shown and that he used it as an inducement to procure the contract in suit. We believe that it was admissible under the rule permitting admission of all negotiations and communications relating to the alleged contract that formed a part of the transaction and that tend to establish or negative the making of such contract

where this question is, as here, issuable. 13 Tex.Jur.2d, Contracts, Sec. 391, p. 669. We quote from the testimony of appellant:

"Q All right, now, then. I will ask you again. Did you ever hear of any agreement between you and Henry Phillips, that Henry Phillips and his company, the Excelsior, would refrain from attempting to sell Elk property to anyone other than Jaffe, except through Sherrill? Did you ever hear of any agreement like that?

A No, sir.

Q Never any such agreement that you know of?

A There wasn't, no."

The jury answered that a contract containing this provision was made.

We overrule point two.[1]

The third point is that the trial court erred in allowing recovery of 6% interest on the commission found to be due from the dates on which such commission was received by appellant. The commission was paid in installments.

The recovery of 6% interest as damages as indicated was within the pleadings of appellee.

We hold that the judgment was not erroneous in this respect. "Interest" is an element of damages suffered by the loss of the use of money. 17 Tex.Jur.2d, Damages, Sec. 24, p. 104. This point is overruled.

Lastly, appellant complains of the refusal of the trial court to permit him to prove the bad reputation of appellee for truth and veracity.

The witness by whom appellant sought to establish the bad reputation of appellee for truth and veracity was Lloyd Leffingwell, a deputy sheriff in Travis County. This witness testified on bill of exceptions that he had heard about appellee's conviction for forgery and receiving a suspended sentence therefor, his five arrests for swindling with worthless checks and that appellee had received a suspended sentence in the Federal Court. This latter conviction was for sending libelous matter through the mails. The witness then testified that appellee's general reputation for truth and veracity in the community where he resided was "bad."

On cross examination, Mr. Leffingwell testified:

"Q You have never discussed his reputation for truth and veracity, now, in the community in which he lives, with any people out there?

A No, sir. My knowledge of his is first-hand knowledge."

All of the above testimony was excluded from consideration by the jury.

The court did not err in excluding this testimony. A witness must know the general reputation of a person in the community where he lives in order to testify to it. He cannot base his knowledge solely on facts known to him personally, or on his own personal beliefs.

It is also the rule that the trial judge's determination of the qualification of

---

1. Testimony similar to the content of the Sun reprint was elicited by appellant from appellee, as follows:

"Q Now, after you discussed these matters on the night of April 6th, what did you all do? What did you and Mr. and Mrs. Hetrick do?

A You mean what did we discuss?

Q Yes.

A Mr. Sherrill said, I can sell this property I feel sure through a customer of mine, or through some of my associates I have sold to, including the Nathan Witkind interest he had in New York in which he had outlined that he sold twenty-seven telephone exchanges, he sold all of these buildings, Shell Building and millions of dollars worth of buildings, in the East, and he felt like that he could sell it if we would give him exclusive and sole right, which we did."

a character witness is usually final. See on these matters Secs. 52 and 53, Tex.Jur.2d, Vol. 61, p. 593–596.

We overrule point four.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.