**A. C. MORGAN, Appellant,**

v.

**CITY OF HUMBLE, Appellee.**

**No. A2166.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 9, 1980.

James Randall Smith, Houston, for appellant.

James V. Garrett, Jr., Humble, Robert W. Simmer, Houston, for appellee.

Before BROWN, C. J., and MILLER and PAUL PRESSLER, JJ.

MILLER, Justice.

The 152nd District Court of Harris County issued an order temporarily enjoining Appellant A. C. Morgan, operator of the Satellite Club in Humble, Texas, and Lynhart J. Krenek, owner of the premises on which the club is located, from allowing the club to be used for the illegal purpose of prostitution. Morgan has appealed. The City of Humble has not favored us with a brief.

At the hearing on the City's motion for temporary injunction, testimony was permitted that although appellant had previously been employed by others as bartender-manager, he had been lessee-operator of the Club only from January 10, 1979 to the date of the hearing. W. F. Kessler, Sergeant, Harris County Sheriff's Office, the sole witness for appellee, testified that from September 19, 1978 to March 7, 1979 fourteen prostitution arrests had been made at the Club, but that since January 10 just two alleged prostitutes have been arrested, and neither had been convicted.

Appellant preserves two points of error, one concerning the admissibility of Sgt. Kessler's testimony, and the other complaining of insufficiency of evidence.

■ The trial court is clothed with broad discretion in determining whether to issue a temporary injunction, and its order will be reversed only on a showing of a clear abuse of discretion, where the pleadings and evidence present a case of probable right and probable injury. *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953).

■ However, a grant of a temporary injunction is an abuse of discretion where the evidence fails to establish a reasonable basis for deciding that the applicant has a probable right of recovery. *Jobe v. Watkins*, 458 S.W.2d 945 (Tex.Civ.App.—Fort Worth 1970, n. r. e.). Nor will such an injunction be granted when the evidence raises material disputed fact issues. *Dallas Independent School District v. Daniel*, 323 S.W.2d 639 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.).

■ Appellant argues in his first point of error that Sgt. Kessler was erroneously, over objection, allowed to testify to the general reputation of the club in the community. We agree.

When counsel for appellee objected that Sgt. Kessler, having testified that the general reputation of the Satellite Club was that "[i]t's a house of prostitution", had no knowledge of the Club's general reputation in the community, the court replied: "For the purpose of this hearing, he can testify as to the reputation."

■ Testimony as to reputation is an exception to the hearsay rule, and may not reflect the personal opinion of the witness. 2 McCormick & Ray, Texas Law of Evidence § 1325 p. 178 (2d ed. 1956); *Sherrill v. Phillips*, 405 S.W.2d 627 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.). To allow Sgt. Kessler to testify to the reputation of the club in the community was reversible error.

■ Appellant's second point of error urges that there was insufficient evidence to support the court's findings that the club is a public nuisance and that Appellant Morgan has allowed prostitutes to ply their trade publicly at the location. We agree.

Sgt. Kessler was the only prosecution witness. No evidence was introduced that tended to prove that under appellant's ownership the Satellite Club was being used for the illegal purpose of prostitution. There is nothing in the record to indicate whether the arrestees were apprehended while soliciting or while merely present at the club.

No connection between them and the club management is shown. The appellant, Morgan, was not present at the time of the arrest; the two women had not been brought to trial and until such time are presumed innocent; and the trial court specifically determined that Morgan was not being enjoined for any occurrence prior to January 10, 1979. The record reveals the following:

THE COURT: At this hearing I will grant the Injunction as to the allowing a public nuisance and prostitution to be carried on at the—whatever that address is as against anyone.

No Bond required. The findings of this Court is that the landlord was not involved or participated in any way in the prostitution, if any, that was carried out at this location.

*Also that Mr. Morgan took possession as a tenant of this property on January 10th of 1979 and that he was [sic] not been enjoined for something that happened prior to that time.* (Emphasis added).

Arrest of two alleged prostitutes, without more, is far from proof that the premises are dedicated to the solicitation of prostitution.

The litany set out above is sufficient for us to sustain appellant's second point. Additionally, we are of the opinion that none of Sgt. Kessler's testimony as to the arrests was admissible. He was not present at the time of the March 7, 1979 arrests, and testified, over objection, from vice division records made by other officers in that department. When counsel for the appellant protested that the City of Humble had not laid the proper predicate for the introduction of those records the following colloquy ensued:

THE COURT: Those records are under your care, custody and control and kept during the normal course of business hours?

THE WITNESS: Yes, sir.

THE COURT: In the regular course of business and the—

THE WITNESS: Only our office has access to those records. The Vice Division Office. No one else has access to those records but us.

MR. SMITH (Appellant's lawyer): Your Honor, you just proved up what he has left out.

THE COURT: I am sorry. I thought I heard him say that. That's why I was trying to see if I misunderstood something.

■ Putting of words in a witness's mouth by the court is far from eliciting testimony as to the reliability of the records. The court was beyond the bounds of his discretion in his interrogation of the witness. Furthermore, the vice division records were not introduced into evidence and do not constitute a part of the record before this court. Sgt. Kessler's testimony was hearsay, and hearsay is no evidence at all and will not sustain a fact finding. *Texas Employers' Insurance Association v. Butler*, 483 S.W.2d 530 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.).

The dissent makes much of the activities at the club prior to Morgan's assumption of ownership on January 10, 1979 and asserts that there were twelve arrests for solicitation or prostitution and no competent evidence of convictions resulting from these arrests. The following excerpt from the record is illustrative of the kind of information provided by the witness, Kessler:

Q Mr. Kessler, you referred to the fact the fourteen cases were made through November, is that correct?

A Yes, sir.

Q These fourteen cases, have any of them been—has there been a disposition made on any of these cases?

A Yes, sir, I think two or three of them finally got to trial during county court and they were convicted.

Q Two or three?

A Yes, sir.

Q Of those two or three, when were they filed?

A In—on Annette went to trial and it was filed 12/11/ of '78. And I think Schultz on 12/6/ of '78, the case made on her, I think she pled on that case

and I am not certain. I think Faith Kay Bonner pled on a case November 16 of '78, that was made on her.

. . . . .

Q So there have been three convictions . . . ?

A *These convictions are just personal recollections of the officers' making comments they either pled or went to trial on it and it is not personal knowledge. And I am not certain of it. To be clear about that.*

Q But anything you are referring to out of those records is not your records, is not your personal knowledge?

A Some of it is and some isn't.

Q Merely recollections of officers previously that have written in the statements, right?

A Yes, sir.

Q Are you saying everything in those records you are not in direct supervision of at all times?

A I am in direct supervision of them always. *But comments were made in the office about dispositions of cases and that is what I am basing on there has been convictions.* (Emphasis added).

While this court recognizes that the type of facility operated by Morgan may well degenerate into a disorderly house, we are bound by the rules of evidence. Handed down on February 13, 1980 by this court is the opinion in *Morgan v. State of Texas,* 596 S.W.2d 220, which demonstrates the proof necessary to sustain a court's action in granting a temporary injunction. The record before us leaves us no alternative under the law but to dissolve the temporary injunction.

That part of the temporary injunction that applies to Morgan is dissolved and the case is remanded to the trial court for trial on the merits.

Reversed in part and remanded.

PAUL PRESSLER, Justice, dissenting.

I respectfully dissent. The trial court's action in granting the temporary injunction should be upheld.

The majority correctly states the standard for appellate review in temporary injunction cases: the trial court will be reversed only upon a clear showing of abuse of discretion. Where there is some evidence of a probable right and probable injury, there is no abuse of discretion. The record contains ample evidence of a probable right and probable injury and the trial court, therefore, did not abuse its discretion.

Appellant's first point of error attacks the admission of testimony given by Sergeant Kessler of the Vice Division, Harris County Sheriff's Office. When Sergeant Kessler testified that the general reputation of the Satellite Club was that it was a place of prostitution, appellant objected on the grounds that Sergeant Kessler's opinion was based upon his personal knowledge derived from the Vice Division Records and not upon the club's actual reputation within the community. The trial court admitted the testimony for the purposes of the temporary injunction hearing which was held without a jury. The record reflects that Sergeant Kessler's response to the inquiry about the club's reputation was made prior to any objection. Moreover, appellant made no more than an unsupported allegation that Sergeant Kessler's testimony was based on the Vice Division records and not on the true general reputation of the club in the community. Appellant failed to avail himself of the opportunity to determine the true basis for Sergeant Kessler's statement through voir dire and Sergeant Kessler made no further statement with regard thereto. Appellant attempts to supply the missing link in his argument by making the highly attenuated contention that Sergeant Kessler's opinion must have sprung from the records of the Vice Division because those records "were not generally available" and the reputation of such an establishment in a small, quiet community such as Humble, Texas, would not be "the subject of general inquiry and community con-

clusion . . . ." Such speculation and conjecture on the part of appellant surely cannot bridge the gap. If the admission of this testimony were error, we may properly assume it was disregarded by the court. *Valley International Properties, Inc. v. Los Campeones, Inc.,* 568 S.W.2d 680 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n. r. e.). At worst, it constitutes harmless error rather than reversible error as argued by the majority. Indeed, its admission was unnecessary to support the granting of the temporary injunction.

Under his second point of error, appellant contends that there was insufficient evidence to support the court's finding that appellant was operating a public nuisance by allowing prostitutes to ply their trade. This point of error should not be sustained. There is uncontroverted testimony in the record that Morgan was bartender and manager of the premises before he became the lessee on January 10, 1979. Prior to January 10, 1979, there had been twelve arrests for solicitation or prostitution. There is no competent evidence in the record of how many of these arrests resulted in convictions. Subsequent to the transfer of the lease on the club to appellant, two additional arrests were made. These two cases had not gone to trial as of the date of the hearing wherein this injunction was granted.

The majority appears to discount the on-going pattern of illicit activity established during appellant's tenure as bartender and manager, pointing out that "[n]o evidence was introduced that tended to prove that under appellant's *ownership* the Satellite Club was being used for the illegal purpose of prostitution" [emphasis added]. In fact, Tex.Rev.Civ.Stat.Ann. art. 4667(a)(2) and (b) (Vernon Supp.1980), the authority under which this suit for injunction was brought, provides in pertinent part:

(a) The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:

.    .    .    .    .

(2) For the promotion or aggravated promotion of prostitution, or compelling prostitution;

.    .    .    .    .

(b) Any person who may use or be about to use, or who may be a party to the use of any such premises for any purpose mentioned in this Article may be made a party defendant in such suit.

As is apparent, one need not be the owner of the premises, but only a user or party to the use of them, to be named a defendant and enjoined from permitting the continued operation of a public nuisance. Consequently, as appellant had been the manager of the premises prior to acquiring the leasehold, evidence of arrests for solicitation on the premises during his tenure would have supported a temporary injunction at that time, evidencing his use or being a party to the use of the premises for the promotion of prostitution.

The majority appears to assume that, as appellant was not enjoined for any activities which took place at the club prior to January 10, 1979, those activities have no relevance in assessing the propriety of an injunction applicable to activities subsequent to that date. However, those prior activities, including twelve arrests for prostitution or solicitation, lend substantial support to the significance of the two arrests made subsequent to the acquisition of the leasehold by appellant, as appellant was manager of the premises when one or more of those prior arrests were made. That is to say, if the two subsequent arrests, without convictions, were the only evidence of an on-going public nuisance, those arrests might not constitute sufficient evidence and the granting of a temporary injunction based thereon could be an abuse of discretion. However, the twelve prior arrests make it evident that the two subsequent arrests were consistent with the established pattern of illicit conduct on the premises and, for purposes of a temporary injunction hearing, constitute evidence. In fact, it is substantially more evidence than is required.

Based on the assumption that the evidence of the arrests prior to January 10, 1979, were irrelevant, the majority proceeds

in attempting to invalidate the testimony with regard to the two arrests made subsequent to that date. In so doing, the majority states, "[t]here is nothing in the record to indicate whether the arrestees were apprehended while soliciting or while merely present at the club." The context, however, surrounding the testimony regarding the arrests clearly indicates that the arrests were made for solicitation on the premises; otherwise, the questions, "Was Mr. Morgan present on the premises at that time?" and "So Mr. Morgan did not have any actual knowledge of what was going on at that time?" posed by appellant's attorney would be meaningless and irrelevant.

The majority also indicates that no connection was made between the two females arrested in the club after January 10, 1979, and the club managership and that appellant was not present at the time of the arrest. However, these are not requirements of the Act. In the case of *Moore v. State*, 107 Tex. 490, 181 S.W. 438 (1915), our Supreme Court, in construing Tex.Rev.Civ. Stat.Ann. art. 4689 (Vernon 1911), the predecessor of article 4667, was faced with the analogous question of whether the owner of a bawdy house who in fact did not have actual knowledge of the use of the premises for said purpose, could be properly enjoined from operating that public nuisance.

The Supreme Court said:

[A]fter a careful consideration, in the light of general principles and the statute, we are convinced that she was, at least, a proper party to the proceeding, and the issuance of an injunction running against her, as well, was therefore not unauthorized. If this had been a criminal prosecution against the owner, knowledge on her part of the unlawful use of the premises would clearly have been essential to justify conviction. But the proceeding was not of that nature. It was a civil suit for the suppression of a public nuisance by means of a civil remedy. The object of the statute would be defeated if the elements necessary to constitute the criminal offense must exist in order for it to apply. Its purpose was a broad one, and it should be given a construction which is consonant with that purpose.

With regard to the question of who may be sued under what circumstances, article 4689 differs in no material way from article 4667. Therefore, the rule remains that an owner of a bawdy house need not have actual knowledge of the use of the premises in order to be subject to this type of temporary injunction. *Accord Dodd et ux. v. State*, 193 S.W.2d 569 (Tex.Civ.App.—Dallas 1946, writ ref'd n. r. e.). Moreover, the owner of a leasehold estate is conceptually indistinguishable from the owner of a fee simple in this context. Therefore, the rule cited above should be made applicable to appellant.

The majority also makes light of the fact that the two arrestees have not yet been brought to trial "and until such time are presumed innocent . . . ." While our majority correctly states the presumption of innocence in criminal proceedings, this presumption does not render the evidence of the arrests inadmissible. The appellee need only produce some evidence of probable right and probable injury, and it is not required to establish that it will ultimately prevail in the litigation. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953); *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517 (1961). The fourteen arrests clearly constitute some evidence.

Finally, the majority, apparently as a matter of dictum, opined that all of Sergeant Kessler's testimony with regard to the various arrests and convictions was inadmissible. The basis for this conclusion appears to be that the testimony was derived from the records of the Vice Division which had not been admitted into evidence under Tex.Rev.Civ.Stat.Ann. art. 3737e. Under the prompting of the court, the appellant objected that the proper predicate had not been laid. The testimony, reproduced in the opinion of the majority, then followed wherein, under the questioning of the court, the predicate was properly laid.

While appellant complained to the trial court that it had "proved up what he has left out," no proper objection was made and none was preserved in this appeal by a point of error. Therefore, any error committed by the court in this regard is waived.

Further, it cannot be maintained that this portion of Sergeant Kessler's testimony was hearsay and no evidence at all when the records on which the testimony rested had been qualified as business records under article 3737e and so acknowledged by appellant. Indeed, appellant must have realized the impropriety of such a claim as it was not raised in any fashion in his brief.

As stated by the Supreme Court in *Texas Foundries v. International Moulders & Workers' Union*, 151 Tex. 239, 248 S.W.2d 460 (1952):

> The granting or refusing of a temporary injunction is subject to a very different character of appellate review from the granting or refusing of a permanent injunction. The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exercised its order should not be overturned unless the record discloses a clear abuse of discretion. [citations omitted] . . . .
> The appellate court cannot substitute its discretion for that of the trial court. It has no independent discretion in reviewing such an order; its sole function is to determine whether there has been a clear abuse of discretion by the trial judge. While the trial judge in this case may have erred in his judgment . . ., it cannot be said that this record discloses an abuse of discretion by him. We held in *Railroad Commission v. Shell Oil Company, supra* of [146 Tex. 286, 206 S.W.2d 235], that even though the district court erred in its conclusion on the applicable substantive law, it did not follow that that court abused its discretion in granting a temporary injunction to preserve the rights of the parties pending trial on the merits.

*Id.* at 462–464. In reversing the trial court below and dissolving the temporary injunction as it applies to appellant, the majority has substituted its discretion for that of the trial court. Further, it is apparent that no case for abuse of discretion has been made by appellant, in accordance with the standards for so determining as set down by the Supreme Court. The only action taken by the trial court was to enjoin the commission of illegal acts. The majority concludes by saying, "While this court recognizes that the type of facility operated by Morgan may well degenerate into a disorderly house, we are bound by the rules of evidence." Based on the foregoing, the rules of evidence do not compel dissolution of the temporary injunction, and a reasonable person could well conclude that we are faced not with the possibility of degeneration but with an accomplished fact.