**Affirmed and Memorandum Opinion filed January 10, 2013.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-12-00832-CV**

---

**NABILCO INC. and D. HOUSTON, INC. D/B/A TREASURES, Appellants**

**V.**

**THE STATE OF TEXAS and THE CITY OF HOUSTON, Appellees**

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2012-28683**

---

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from a temporary injunction that was sought by the State and the City of Houston to abate a common nuisance at Treasures, a gentlemen's club, pursuant to Chapter 125 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 125.001—.047. Appellants raise five issues challenging the propriety of the temporary injunction order and some of the restrictions imposed therein. We affirm.

## PROCEDURAL BACKGROUND

Appellees filed suit in May 2012 alleging that the business operated by D. Houston, Inc. d/b/a Treasures (Treasures),[1] and its landlord and owner of the property, Nabilco Inc., maintained a nuisance by tolerating and failing to take reasonable steps to abate drug activity and prostitution occurring on the property. *See* Tex. Civ. Prac. & Rem. Code §§ 125.0015(a)(4); (a)(6). On September 10, 2012, at the conclusion of a four-day evidentiary hearing, the trial court made its oral ruling from the bench. The trial court found that Treasures (1) was habitually used for purposes of prostitution and the sale and/or possession of drugs; (2) knowingly tolerated this activity; and (3) failed to make reasonable efforts to abate the activity. Appellants immediately filed a notice of appeal, and the appeal was assigned to this court.

On September 11, 2012, Treasures filed a notice of removal of the case to the United States District Court for the Southern District of Texas. Although Treasures advised this court of the removal on September 18, 2012, the notice required by statute was not filed with this court until October 19, 2012. *See* 28 U.S.C. § 1446(d). We then abated the appeal.

The trial court signed the injunction order that is the subject of this appeal on October 12, 2012, after the case was remanded from federal court. The injunction order included ten specific provisions requiring appellants to take steps necessary to prevent the use of the premises as a common nuisance pending final trial. On October 18, 2012, appellants filed an emergency motion asking this court to stay

---

[1] In 2011, this court affirmed the decision to deny Treasures additional time to comply with the City of Houston's 1997 ordinance regulating sexually oriented businesses (SOBs). *See D. Houston, Inc. v. City of Houston,* 14-10-00384-CV, 2011 WL 2536162 (Tex. App.—Houston [14th Dist.] Jun. 28, 2011, no pet.) (mem. op.). The issues in this appeal do not involve the City's SOB ordinance. Treasures denies that it is operating as a SOB, referring to its business as a "bikini bar," and asserts that its status is the subject of a separate suit pending in another Harris County District Court.

portions of the injunction. The motion was denied, among other reasons, because the case had been removed to federal court. After the motion for stay was denied, Treasures filed a copy of the federal court's October 3, 2012 remand order. The appeal then was reinstated.

Appellants filed a petition for writ of mandamus in the Texas Supreme Court on October 19, 2012. On October 26, 2012, the Texas Supreme Court issued an order staying parts of the injunction. *See In re Nabilco Inc. and D. Houston Inc. d/b/a Treasures,* No. 12-0852 (Tex. Oct. 26, 2012) (order). The original proceeding remains pending at the Texas Supreme Court.

Appellants filed an amended notice of appeal with this court to evidence their intent to appeal from the trial court's temporary injunction order signed on October 12, 2012. The record and the parties' briefs were then filed. On December 27, 2012, the City of Houston advised this court that it has reached a settlement with appellants and will not file a brief in this appeal. No motion to dismiss the City as a party to the appeal has been filed as of the date of this opinion. The appeal was set at issue and ready for submission to the court on December 27, 2012.

Trial of the permanent injunction had been set for December 10, 2012, but was reset for reasons not disclosed in the appellate record. According to the parties, trial is scheduled to commence February 4, 2013.

## STANDARD OF REVIEW

Our review of an order granting a temporary injunction is limited to a determination of whether the trial court clearly abused its discretion. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex. 2002). In reviewing the trial court's order granting temporary injunctive relief, we do not review the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).

3

To determine whether a trial court abused its discretion, we must decide if it acted without reference to any guiding rules or principles; in other words, we must decide whether the trial court's order was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Any factual issues decided by the court in reaching the decision under review are not reviewed by legal and factual sufficiency standards, but the facts determined by the court must have some support in the evidence. *Haddock v. Quinn,* 287 S.W.3d 158, 170 n.2 (Tex. App.—Fort Worth 2009, pet. denied). If some evidence supports the trial court's decision, no abuse of discretion has been shown. *Butnaru,* 84 S.W.3d at 211.

We must not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru,* 84 s3 at 211. We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, ___ S.W.3d ___, No. 01-11-00473-CV, 2012 WL 3525384, *5 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.) (citing *Davis*, 571 S.W.2d at 862). An abuse of discretion does not exist if the trial court bases its decisions on conflicting evidence. *Bailey v. Rodriguez,* 351 S.W.3d 424, 426 (Tex. App.—El Paso 2011, no pet.) (citing *Davis*, 571 S.W.2d at 862).

When, as here, an applicant relies upon a statutory source for injunctive relief, the statute's express language supplants the common law injunctive relief elements such as imminent harm, irreparable injury, and lack of an adequate remedy at law. *Butnaru*, 84 S.W.3d at 210 (recognizing that requirements for establishing right to common law injunctive relief differ from those where injunctive relief is authorized by statute).

# CHAPTER 125

Suits to enjoin a common nuisance are addressed in Chapter 125 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 125.001—.047. A common nuisance exists if the defendant:

> 1. maintains a place to which persons habitually go for certain illegal purposes;
> 2. knowingly tolerates the activity; and
> 3. fails to make reasonable attempts to abate the activity.

Tex. Civ. Prac. & Rem. Code § 125.0015(a). Two of the illegal purposes enumerated in the statute are:

> 1. delivery or possession of a controlled substance in violation of Chapter 481 of the Health and Safety Code.; and
> 2. prostitution, as prohibited by the Penal Code.

Tex. Civ. Prac. & Rem. Code § 125.0015(a)(4), (6).

If the trial court determines that the party seeking to enjoin the nuisance is likely to succeed on the merits of its suit, section 125.0045(a) authorizes the court to impose reasonable requirements to prevent use of the premises as a nuisance pending final trial. The statute provides in relevant part as follows:

> If, after notice and hearing on a request by a petitioner for a temporary injunction, a court determines that the petitioner is likely to succeed on the merits in a suit brought under Section 125.002, the court:
>
> (1) may include in its order reasonable requirements to prevent the use or maintenance of the place as a nuisance. . . .

Tex. Civ. Prac. & Rem. Code § 125.0045(a).

An appeal from a temporary injunction granted in a suit to abate a common nuisance is required to be decided within ninety days of the injunction order. *See* Tex. Civ. Prac. & Rem. Code § 125.003(c). Accordingly, we have expedited consideration of this appeal without the benefit of the Texas Supreme Court's

decision on appellants' pending petition for writ of mandamus.

## OVERVIEW OF ISSUES PRESENTED

Appellants raise five issues in this appeal challenging both the bases for issuance of the injunctive order and the reasonableness of some of the restrictions imposed therein. Appellants have framed some of the issues as challenges the sufficiency of the evidence. We will apply the appropriate abuse of discretion standard outlined above.

Appellants have not challenged provisions 1, 7, and 8 in the temporary injunction. The Texas Supreme Court has stayed provisions 5, 6, 9 and part of 10.[2] Treasures is not currently bound to comply with these provisions; therefore, they are not at issue in this appeal. Because a court of superior jurisdiction has stayed these provisions, any declaration by this court about the propriety of these provisions would have no practical legal effect on the controversy between the parties. *See Morton v. City of Boerne,* 345 S.W.3d 485, 489 (Tex. App.—San Antonio 2011, pet. denied). This is particularly true with respect to a temporary injunction order in a case set for trial on the merits in less than a month. As long as the stay is in effect, any decision by this court would be advisory. *See id.* Therefore, we will consider appellants' issues only with respect to the remaining provisions in the injunction. These are provisions 2, 3, 4, and the portion of provision 10 that was not stayed by the Texas Supreme Court.

The provisions at issue in this appeal require appellants to:

2. Thoroughly check all bags of all independent contractors and

---

[2] The Texas Supreme Court stayed, pending further orders, the provisions in the October 12, 2012, temporary injunction that require appellants to (1) terminate all employees or contractors with a felony conviction in the last ten years; (2) install 14 additional video cameras on the premises and deliver the recordings to the appellees; (3) perform random drug tests on employees and contractors and deliver the results to appellees; and perform criminal background checks on employees and contractors and deliver these results to appellees.

employees each time they enter [appellants'] premises. Bag checks must be performed at the front desk and be captured on camera surveillance;

3. Enforce a dress code as to all employees and independent contractors requiring that they fully cover their buttocks while on [appellants'] premises;

4. Enforce a dress code for all patrons on the [appellants'] premises, specifically, shirts must be tucked in;

10. Use existing cameras in [appellants'] premises . . . to record activity at all times that [appellants'] premises are open.[3]

In addressing appellants' issues, appellees have re-stated the fundamental issues in our review of the temporary injunction as follows:

1. Whether the trial court clearly abused its discretion in determining that the State of Texas was entitled to temporary injunctive relief to attempt to enjoin or abate a common nuisance (prostitution and drug activity) at Treasures until trial for permanent injunctive relief.

2. Whether the trial court clearly abused its discretion in crafting a temporary injunction order that contained reasonable requirements to prevent the use or maintenance of Treasures as a common nuisance.

## DISCUSSION

A temporary injunction to prevent the use or maintenance of Treasures as a common nuisance pending the final trial is appropriate if some evidence shows that (1) appellants maintain a place to which persons habitually go for drugs and prostitution;[4] (2) appellants knowingly tolerate the activity; and (3) appellants

---

[3] The videotapes are to be delivered weekly to the County Attorney's office, with restrictions to limit their dissemination.

[4] The Texas Penal Code defines solicitation of prostitution as follows:

A person commits an offense if he knowingly: (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or (2) solicits another in a public place to engage with him in sexual conduct for hire.

Tex. Penal Code § 43.02(a).

7

failed to make reasonable attempts to abate the activity. *See* Tex. Civ. Prac. & Rem. Code § 125.0015(a). Because the trial court found that appellees are likely to succeed on the merits, the injunction included requirements to prevent Treasures's use or maintenance as a nuisance pending final trial. *See* Tex. Civ. Prac. & Rem. Code § 125.045(a). We will address the elements necessary to show a common nuisance first, and then consider the reasonableness of the restrictions imposed in the injunction, taking appellants' issues out of order.

In their third issue, appellants challenge the trial court's finding that Treasures is habitually used for prostitution and drug-related activities, the first element of a common nuisance. Specifically, appellants assert that evidence of numerous convictions, not mere accusations, should be required to establish that a premises is habitually used for one of the enumerated crimes. They argue that the injunction should be reversed because the number of convictions for prostitution and drug crimes resulting from arrests at Treasures is so small that it cannot constitute habitual use.

There was evidence admitted at the hearing that in the three-year period immediately preceding the underlying suit, there were forty arrests at Treasures. The offense reports of the arrests were admitted as evidence. The reports contain the circumstances surrounding the twenty-one prostitution arrests and ten drug arrests at Treasures during the three-year period. At the time of the hearing, only five of the prostitution cases had resulted in convictions, and there were three convictions for possession of controlled substances. Therefore, during this three-year period there were eight convictions for offenses covered by Chapter 125.

We disagree with appellants' contention that multiple convictions for Chapter 125 crimes must be shown to establish a common nuisance. The plain language of the statute demonstrates otherwise. The statute provides that "[e]vidence of the general reputation of the place involved is admissible to show

the existence of the nuisance." *See* Tex. Civ. Prac. & Rem. Code § 125.004(c). This provision would be meaningless if the existence of a common nuisance could be established only with evidence of convictions. The statute expressly provides that evidence of convictions *and arrests* for enumerated offenses are admissible to show knowledge of the nuisance. *Id.* § 125.004(b) (emphasis added).[5] The statute does not contain a similar provision to show habitual use; but because arrests are expressly permitted to establish that the owner of the premises had knowledge of the illegal activities, it would be absurd to interpret the statute in a manner in which arrests may not be considered to show the premises are habitually used for those crimes.

The term "habitually" is not defined in the statute, and the few cases offering guidance on its meaning applied the predecessor statute to Chapter 125.[6] For example, in *Otten v. Town of China Grove*, 660 S.W.2d 565, 569 (Tex. App.—San Antonio 1983, writ dism'd), the appellate court determined that "a few incidents of alleged gambling" on two of the three Sundays that a horse race track was open were insufficient to show habitual use of the race tract for gambling.

At the other end of the spectrum, in *Deblo, Inc. v. State,* 654 S.W.2d 807, 810-11 (Tex. App.—Houston [14th Dist.] 1983, writ dism'd), this court upheld an injunction because the record was "replete with testimony of solicitations for

---

[5] "Evidence that persons have been arrested for or convicted of offenses for an activity described in Section 125.0015 in the place involved is admissible to show knowledge on the part of the defendant with respect to the act that occurred." *See* Tex. Civ. Prac. & Rem. Code § 125.004(b).

[6] *See* Former Arts. 4664 to 4667, Tex. Rev. Civ. Stat. (repealed by Acts 1985, 69th Leg., ch. 959, § 9(1), eff. Sept. 1, 1985., enacting the Civil Practice and Remedies Code). Former Tex. Rev. Civ. Stat. art. 4667(a)(2)(a) provided in relevant part:

> (a) The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:
>
>          \*        \*        \*
>
> (2) For the promotion or aggravated promotion of prostitution, or compelling prostitution . . . .

9

prostitution" on the premises. We rejected the contention that the injunction should be reversed because the evidence of these solicitations was insufficient to support convictions, finding the evidence showed that the premises were used for prostitution. *Id.*

In *Benton v. City of Houston,* 605 S.W.2d 679, 682 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ), this court identified evidence in the appellate record showing the owners had promoted prostitution, warranting injunctive relief. There was evidence that when the undercover officers visited the Crystal Pistol and sat down at a table, a female employee would sit in the officer's lap and offer sexual relations at a "party table" at the back of the club in return for the purchase of a high-priced drink. *Id.; see also Morgan v. State,* 596 S.W.2d 220, 221 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) (affirming temporary injunction to abate prostitution at a club based on testimony from two vice squad officers and a civilian that on three different occasions they were repeatedly solicited to engage in sexual activities at the premises in exchange for pre-determined fees).

The quantum of proof in the case relied on by appellants, *Morgan v. City of Humble,* 598 S.W.2d 364 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ), is far less than the evidence in this record. In *City of Humble,* we reversed a temporary injunction granted against a club because prostitution was alleged to have occurred there. *Id.* at 365-66. We rejected reliance upon the testimony of a single police officer who had no personal knowledge. *Id.* The arrest of two alleged prostitutes was insufficient to show that the premises were "dedicated to the solicitation of prostitution." *Id.* The testifying officer was not present at the arrests, and we observed that "[t]here is nothing in the record to indicate whether the arrestees were apprehended while soliciting or while merely present at the club. No connection between them and the club management is shown." *Id.*

Here, in contrast to *City of Humble,* undercover police officers visited

Treasures at least eight times over several months. Three officers testified about their personal observations and experiences while working undercover at Treasures. They testified to repeated offers of sex for money when they visited the premises. Officers visited the "VIP" area upstairs at the club twice and both times witnessed sex acts in progress. Officers also purchased controlled substances (cocaine and methamphetamine) from dancers at Treasures on two occasions.

These officers' testimony at the temporary injunction hearing constitutes some evidence that Treasures was habitually used as a locale for soliciting prostitution and selling illegal drugs. We overrule appellants' third issue.

In their fifth issue, appellants contend the evidence is insufficient to show that they "knowingly tolerated" the prostitution and drug violations at Treasures, the second element of a common nuisance under Chapter 125. *See* Tex. Civ. Prac. & Rem. Code § 125.0015(a). The statute contains specific provisions about evidence and the burden of proof for this element. First, "[p]roof that an activity described by Section 125.0015 is frequently committed at the place involved or that the place is frequently used for [such an activity] . . . is prima facie evidence that the defendant knowingly tolerated the activity." Tex. Civ. Prac. & Rem. Code § 125.004(a). Second, as mentioned above, proof of arrests and convictions is admissible to show knowledge. *Id.* § 125.004(b). In addition, the posting of a sign prohibiting the crime is not conclusive evidence that the defendant did not tolerate the crime. *Id.*

In addition to the officers' testimony about numerous specific instances of solicitation of prostitution and two drug sales, our record contains evidence of thirty-one arrests and eight convictions for drug activity and prostitution that occurred at Treasures. The record also reveals that David Davari, the club's president, was actually aware of many, if not all, of the arrests and convictions. The frequency of the illegal activity is some evidence that the activity was

11

knowingly tolerated.

To show that they did not tolerate prostitution and illegal drugs, appellants provided evidence of Treasures' company policies and claimed strict enforcement or a "zero tolerance" policy regarding instances of prostitution and drug activity. Dancers at Treasures are required to sign an Independent Contractor Packet containing the club's rules and policies, which include the following:

1. Dancers must sign forms acknowledging the club's policies before every shift;

2. Bag checks are performed on all employees and dancers before every shift to ensure that no drugs, drug paraphernalia, or condoms are brought to the club;

3. Signs are posted throughout the club alerting employees and contractors of the zero tolerance policy and that prostitution is a crime;

4. All potential employees and dancers are screened to determine if they have ever been convicted of a drug crime or prostitution;

5. Managers routinely patrol the club to ensure that no improper behavior occurs;

6. Customers are expelled if found engaging in either sex acts or seeking drugs;

7. All association with dancers and employees who commit a crime is terminated; and

8. Police are called if issues arise and police are allowed to enter the club.

The club reserves the right to terminate dancers' employment for any violation of these rules. The rules are enforced by four shift managers on duty each night.

Gene Moreno, one of the managers, testified that generally a dancer is sent home and suspended and a customer is asked to leave if sexual contact or drugs are observed. Moreno denied ever observing any sexual activity in the upstairs areas. He testified that Treasures has a policy prohibiting physical contact between the dancers and customers, and he enforces that policy. Crystal Cowart, a club hostess,

also testified that when dancers or other employees are involved in illegal conduct, they are immediately suspended and any customers involved are expelled from the club. She stated that Treasures' president, David Davari, terminates dancers who have been arrested and only allows them to return to work if and when charges are disposed favorably.

The record contains ample evidence that appellants did not strictly enforce its policies. Undercover officers testified about their observations and experiences during numerous visits to Treasures. The officers testified that the dancers engaged in suggestive physical contact with the officers and other customers. Even though four managers were on duty while the officers were at the club, the officers never saw them intervene when dancers suggestively touched them or other customers. The officers also testified that the dancers offered sex for money, dancers offered to obtain illegal drugs for them, and one officer observed a customer engaged in a sex act with a female employee in the private upstairs VIP room.

There was also evidence of a police raid at Treasures. One officer caught a customer and a dancer engaging in a sex act upstairs in a booth in the VIP area. He found a used condom and multiple condom wrappers littering the floor and benches in that area. The officer testified that after the raid, the club resumed operations the same night, "business as usual . . . as if nothing happened." Three months later, a male and female officer, posing as a couple, visited the club and negotiated a fee of $500 for three-way sex with a dancer, while recording the negotiations.

We conclude that there is some evidence that appellants knowingly tolerated the illegal activity. Appellants' fifth issue is overruled.

In issue four, appellants challenge the sufficiency of the evidence to support a finding that they did not take "reasonable attempts to abate" the illegal activity constituting a common nuisance, the third prong necessary for a common nuisance

finding. *See* Tex. Civ. Prac. & Rem. Code § 125.0015(a). Appellants argue that they are being held to an impossible standard requiring 100% success in abating the illegal activity. The court has not required 100% success, however.

The same evidence recited above also applies to this element. Although Treasures has implemented policies to limit illegal activities, the record contains evidence of widespread violations of Treasures' rules and policies. Despite the club's "no touching" policy, the undercover officers testified that dancers sat in their laps and touched them suggestively. There is also evidence of lax enforcement by management. The officers testified that managers observed violations and did not intervene. There was evidence that the lighting in parts of the club is extremely low, high-backed chairs block the view of many activities, and the booths upstairs are dark and secluded, all of which make improper conduct easier to conceal. Even though appellants presented some evidence that efforts are being made to abate prostitution and drug use, the trial court reasonably could have concluded that appellants were not making a serious effort based on the lax enforcement. There is some evidence to support the trial court's finding on the third element required for a common nuisance. We overrule appellants' fifth issue.

In appellants' first issue, they have challenged the reasonableness of the temporary injunction's requirements to prevent the club from being used as a common nuisance pending final trial. The requirements imposed by the court must "directly correlate" to the elimination of the nuisance activity. *Martinez v. State,* 323 S.W.3d 493, 503 (Tex. Crim. App. 2010) (addressing a conviction for violating the terms of a permanent injunction to abate a public nuisance).

The provisions at issue in this appeal require appellants to thoroughly check all bags of independent contractors and employees each time they enter appellants' premises and videotape those checks, enforce a dress code for all patrons on the premises requiring shirts to be tucked in, enforce a dress code for dancers to cover

14

their buttocks, and use existing video cameras to record activity at all times that the premises are open.

Appellants argue that bag checks and video cameras, with tapes submitted to the State, violate the Fourth Amendment protections against unreasonable searches and seizures. This contention fails because the rights invoked by Treasures belong to the individual employees, contractors, and patrons – not to Treasures. "Fourth Amendment Rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133-34, 99 S.Ct. 421, 428 (1978); *see also United States v. Pack,* 612 F.3d 341, 347 (5th Cir. 2010) ("Fourth Amendment rights are personal rights, which may be enforced only by the person whose rights were infringed."). A party lacks standing to complain about the invasion of someone else's personal rights. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). Therefore, appellants have no standing to assert a Fourth Amendment claim on behalf of Treasures' dancers and customers. *See Club Retro, LLC v. Hilton,* 568 F.3d 181, 195 n. 5 (5th Cir. 2009) (club owner had no standing to assert Fourth Amendment rights on behalf of its patrons).

Next, the injunction's dress code requirement that shirts be tucked in is reasonably related to curbing illicit acts. Shirt tails could conceal improper touching and conceal drugs or drug paraphernalia. Appellants only briefly referred in their briefing to the dress code requirement that dancers keep their buttocks covered and made no specific arguments about why it not reasonable. Treasures' employees and dancers testified that the club is a "bikini bar," in which the dancers are required to wear "full bottom" bikinis. Videotapes were admitted into evidence showing that dancers sometimes did not appear to comply with this requirement. The trial court could have found that the dress code requirement for dancers is reasonably related to limiting prostitution.

We conclude that some evidence supports the reasonableness of these

15

challenged restrictions. Accordingly, we overrule appellants' first issue.

In their second issue, appellants contend that the temporary injunction improperly granted final relief. A final judgment in favor of a plaintiff, as opposed to a temporary injunction, "must order that the place where the nuisance exists be closed for one year after the date of judgment." Tex. Civ. Prac. & Rem. Code § 125.002(e). Appellants argue that allowing video cameras in the club is a "constructive padlock," which has the effect of closing the club and accomplishing final relief in a temporary order. In *Stone Fox v. State,* 668 S.W.2d 911, 912-13 (Tex. App.—Houston [14th Dist.] 1984, no writ), also decided under the prior version of the nuisance statute, we reversed part of temporary injunction ordering a club padlocked for one year, or until either appellant posted a bond and agreed to abate the nuisance or until the final hearing. We found the padlock order improper because an order closing the premises is reserved for final judgment. *Id.*

The only evidence supporting appellants' claim that video cameras will effectively result in closure of the club is in the form of opinion testimony from club employees and a dancer. Ms. Cowart, a hostess, testified that "[n]obody really wants to be recorded." Floor manager Moreno stated that in his opinion, videotaping inside Treasures would "be detrimental" because the clientele "would not want to be in that building at all." One of the dancers at the club testified that most of the club's customers are businessmen who would not want video cameras because they may not want their wives to know they were at the club.

There is evidence in the record that Treasures already has twelve video cameras in the club that have been in use for years. Evidence at the hearing was that generally there may be about 200 customers and 100 dancers at Treasures on an average night. Therefore, the existing cameras do not appear to deter patrons. This evidence contradicts testimony that cameras would drive away customers, effectively closing the club. When evidence is conflicting, no abuse of discretion is

16

shown. We overruled appellants' second issue.

## CONCLUSION

There is some evidence in the record supporting the trial court's determination that a common nuisance is maintained at Treasures warranting temporary injunctive relief. The portions of the trial court's injunction currently in force are supported by some evidence and are reasonably related to preventing use of the premises as a nuisance pending final trial. The trial court did not clearly abuse its discretion, and the temporary injunction order is affirmed.

PER CURIAM

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.